IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|||
|---|---|
| HEARL FACEY | * |
| Plaintiff | * |
| v. | * CIVIL No. JKB-13-3256 |
| DAE SUNG CORPORATION., *et al.*, | * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Hearl Facey ("Plaintiff") brought this suit against the Dae Sung Corporation[1] ("Dae Sung"), LB&B Associates Inc. ("LB&B"), and the International Union of Operating Engineers, Local 37 Scholarship Fund, Inc.[2] (the "Union" and, collectively with other defendants, "Defendants") alleging violations of 31 U.S.C. §3730(H) and 42 U.S.C. §§ 1981, 1985, and 1986, as well as state statutes and common law in relation to the termination of Plaintiff's employment with FTSS Joint Venture ("FTSS JV"). Now pending before the Court is Defendants Dae Sung and LB&B's motion to dismiss Counts Five and Six of Plaintiff's complaint (ECF No. 11). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, the motion to dismiss will be GRANTED.

---

[1] It appears that Plaintiff has made a mistake in the name of the first Defendant. It is Dae Sung, LLC and not Dae Sung Corporation. (ECF No. 1 at 1.) The Court will instruct the Clerk to amend the docket to correct this mistake.
[2] It appears Plaintiff may have mistakenly named the International Union of Operating Engineers, Local 37 Scholarship Fund, Inc. as a Defendant, intending instead to bring suit against the International Union of Operating Engineers, Local 37. (ECF No. 23 at 3 n.1.)

I.  BACKGROUND[3]

Plaintiff is an "old African American male citizen of the U.S. of Jamaican national origin" who has been employed as a building engineer by FTSS JV since June 12, 2008. (ECF No. 2 at ¶¶ 2, 11.) FTSS JV is a joint venture between Dae Sung, which owns 51% of the equity in FTSS JV, and LB&B, which owns 49% of the equity in FTSS JV. (*Id*. at ¶¶ 3, 4.) FTSS JV provides "facility and maintenance services . . . at the Centers for Medicare and Medicaid Services headquarters complex in Woodlawn, Maryland." (*Id.* at ¶ 5.) Throughout his tenure at FTSS JV, Plaintiff has "performed his job commendably, if not satisfactorily." (*Id*. at ¶ 11.)

On Tuesday, February 28, 2012, Dale Morissey, Plaintiff's supervisor, asked him to assist subcontractors who were performing tests on smoke detectors. (*Id.* at ¶ 12.) During these tests, the subcontractors set off one of the building's alarm. (*Id.*) After one of the subcontractors turned the alarm off, James Wack, a project manager with FTSS JV, instructed the subcontractor to set the alarm off again. (*Id.*) Plaintiff describes Wack as being "White" and of "U.S. national origin." (*Id.*)

The February 28 incident led to an investigation that was conducted by Wack and Bill Shriver, FTSS JV's chief engineer. (*Id*. at ¶ 13.) On Wednesday February 29, 2012, Plaintiff was called to a meeting with Shriver, Wack, Morissey, and Joseph Single.[4] (*Id*.) They informed Plaintiff that they had concluded that (1) the subcontractors were responsible for setting off the alarm; (2) "the engineers did not have required training on the particular alarm system;"[5] and (3) Plaintiff would be given a verbal warning for not checking to see if the alarm had been deactivated. (*Id.*)

---

[3] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).
[4] The complaint does not provide any further information on Joseph Single. Hiowever, the Court infers that he is also an employee of FTSS JV.
[5] It is unclear whether the phrase "the engineers" is meant to include Plaintiff.

On Saturday, March 3, 2012, Plaintiff returned to work and was fired by Wack. (*Id.* at ¶ 14.) Wack explained to Plaintiff that the "FTSS JV human resource [sic] office" had rejected the decision to give Plaintiff a verbal warning. (*Id.*) Plaintiff alleges that other engineers, including Mitchell Perkey, Thomas Slinger, Lee Best, and Anthony Lamortina, had incidents where they "set off the building alarms by error or inadvertently, and none of them were fired." (*Id.*) Plaintiff further alleges that "[u]pon information and belief, they were given verbal warnings." (*Id.*) Also, Plaintiff was the only engineer who was "an African-American of Jamaican national origin." (*Id.*)

Plaintiff filed a grievance with the Union regarding his termination, pursuant to a collective bargaining agreement ("CBA"). (*Id.* at ¶ 18.) However, Plaintiff alleges that the "Union refused to pursue Plaintiff's grievance against the termination of his employment." (*Id.*)

In the weeks and months before his firing, Plaintiff had issues with Lee Best, another FTSS JV engineer who also served as shop steward[6] for the Union and sometimes "relieved [Plaintiff] at work." (*Id.* at ¶¶ 15, 17.) Plaintiff describes Best as African-American and of "U.S. national origin." (*Id.*) Plaintiff had been complaining about Best's "frequent late attendance" and reported that even when Best was late for work, "he reported . . . that he had arrived to work on time and was paid for full shifts." (*Id.*) Plaintiff thought this was "unfair and dishonest." (*Id.*) However, Wack was "displeased whenever [Plaintiff] reported Best's tardiness." (*Id.*)

On Thursday March 1, 2012 Wack learned that Plaintiff had a second full time job and "concluded this was the reason why [Plaintiff] was not accommodating Mr. Best's tardiness." (*Id.* at ¶ 16.) Plaintiff alleges that Wack and Best "then conspired to use the February 28, 2012

---

[6] Plaintiff does not define the term shop steward. The Court therefore understands Plaintiff to be using the term to refer to: "A union member elected by the employees in a shop, department, or plant to serve as the representative of the union and charged mainly with negotiating adjustments of grievances of employees with the employer usually through the foreman." *Shop Steward*, *in* Webster's Third New International Dictionary (Philip B. Grove, ed., 1981).

incident as a pretext to terminate [Plaintiff's] employment in order to accommodate Mr. Best and the risk and exposure associated with [Plainitff's] reporting and claiming overtime for the hours when Mr. Best was late." (*Id.*) Plaintiff further alleges that Wack and Best "also conspired to use the February 28, 2012 [sic] as a pretext for termination due to Plaintiff's race and national origin." (*Id.*)

On September 27, 2013, Plaintiff filed his complaint with the Circuit Court of Maryland for Baltimore City ("Circuit Court"). (ECF No. 2.) On November 1, Defendants removed the action to this Court. (ECF No. 1.) On November 7, Defendants Dae Sung and LB&B filed the present motion to dismiss Counts Five and Six of Plaintiff's complaint. (ECF No. 11.)

## II.  LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

Defendants Dae Sung and LB&B have moved to dismiss Counts Five and Six of Plaintiff's complaint. (ECF No 11.) The Court will consider each count in turn, beginning with Count Six.

### a. Count Six—Violation of 42 U.S.C. § 1986

Plaintiff's claim under 42 U.S.C. § 1986 is untimely. Claims for violations of § 1986 are subject to a one-year statute of limitations. 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."). Here, Plaintiff's claims are based on the termination of his employment, which occurred on March 3, 2012. (ECF No. 2 at ¶ 14.) Plaintiff filed the present action in the Circuit Court on September 27, 2013, more than twelve months after the cause of action accrued. (ECF No. 2.) Therefore, Count Six of Plainitff's complaint shall be dismissed.[7]

### b. Count Five—Violation of 42 U.S.C. § 1985

Plaintiffs have failed to plead sufficient facts to support their § 1985 conspiracy claim against Defendants. In order to state a claim under 42 U.S.C. § 1985(3), which creates a private cause of action against "two or more persons . . . [who] conspire . . . for the purposes of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3), a plaintiff must prove the following:

> (1) A conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

---

[7] Plaintiff has conceded this point. Indeed, in his memorandum in opposition to Defendants Dae Sung and LB&B's motion to dismiss, Plaintiff does not present any arguments to counter Defendants Dae Sung and LB&B's claim that Count Six should be dismissed. (ECF No. 20-1.) Further, Plaintiff's memorandum is styled "Plaintiff's memorandum in support of Plaintiff's *partial* opposition to motion to dismiss Counts Five and Six of Plaintiff's complaint & jury demand." (*Id*.) (Emphasis added).

*A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Here, Plaintiff has failed to allege sufficient facts to render its claim under § 1986 "plausible on its face" and enable the Court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In particular, Plaintiff has failed to allege concrete facts to allow the Court to draw the reasonable inference that there was a "conspiracy of two or more persons" who were "motivated by a specific class-based, invidiously discriminatory animus." *A Society Without a Name*, 655 F.3d at 346.

In order prove a section 1985 conspiracy "a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons*, 47 F.3d at 1377. This standard is "relatively stringent." *Id.* In fact the Fourth Circuit, under this standard,

> has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion. Indeed, [the court has] specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.

*Id.*

Here, Plaintiff's allegation is that "all three Defendants conspired for the purposes of depriving Plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws by terminating Plaintiff's employment and denying Plaintiff grievance." (ECF No. 2 at ¶ 42.) The Court will begin its analysis with the Union's alleged involvement in the conspiracy.[8]

---

[8] The Court reiterates that, in fact, Plainitff has named the International Union of Operating Engineers, Local 37 Scholarship Fund, Inc. as a Defendant rather than the International Union of Operating Engineers, Local 37. However, this apparent mistake is of no moment in adjudicating the present motion to dismiss.

Plaintiff alleges that although he filed a grievance regarding his termination, "the Union refused to pursue" it. (ECF No. 2 at ¶ 18.) In order to support his claim that the Union conspired with the other Defendants, Plaintiff alleges that Best, who in addition to being an employee of FTSS JV was Union's shop steward, conspired with Wack, the FTSS JV project manager, to "use the February 28, 2012 incident as a pretext to terminate [Plaintiff's] employment." (*Id.* at ¶¶ 15, 16, 17.) Although Plaintiff does not make the point explicitly, the Court reads his complaint as alleging that Best, as shop steward, was responsible for the Union's decision not to pursue Plaintiff's grievance.

Plaintiff further alleges that Wack and Lee acted in concert "in order to accommodate Mr. Best['s frequent tardiness] and avoid the risk and exposure associated with [Plaintiff's] reporting and claiming overtime for the hours when Mr. Best was late." (*Id.* at ¶ 16.) Further, Plaintiff alleges that "Mr. Wack and Mr. Best also conspired to use the February 28, 2012 [sic] as a pretext for termination due to Plaintiff's race and national origin." (ECF No. 2 at ¶ 16.)

In order to state a § 1985 conspiracy claim, Plaintiff must show that the co-conspirators were each "motivated by a specific class-based, invidiously discriminatory animus." *A Society Without a Name*, 655 F.3d at 346. Here, Plaintiff has alleged several specific facts that, taken together, might support his contention that Best and Wack were motivated by a desire to retaliate against Plaintiff for his complaints regarding Best's tardiness. However, his allegation that Best and Wack were motivated by Plaintiff's "race and national origin" lacks any concrete supporting facts. As a result, the Court finds that Plaintiff's pleadings are insufficient to support his claim that the Union conspired with Defendants Dae Sung and LB&B for the purposes of depriving him of the equal protection of the laws or of equal privileges and immunities under the law, in violation of § 1985.

This leaves two Defendants—Dae Sung and LB&B. In order to support his claim against Dae Sung and LB&B, Plaintiff states that he was fired from FTSS JV, Defendants Dae Sung and LB&B's joint venture, for "failing to check if the alarm had been deactivated" on June 12, 2008. (ECF No. 2 at ¶¶ 13, 14.) Second, he states that "other engineers, including Mitchell Perkey, Thomas Slinger, Lee Best and Anthony Lamortina have had incidents where they set off the building alarms by error or inadvertently, and none of them were fired." (*Id*. at ¶ 17.) Third, he alleges that these other engineers were given verbal warnings" and that "Plaintiff was the only engineer who was an African-American of Jamiacan national origin." (*Id.*)

Plaintiff further alleges that (1) the June 12, 2008 incident was investigated by Wack and Shiver, (2) the original decision to give Plaintiff a verbal warning as a result of the incident was made by Shriver, Wack, Morissey, and Single, and (4) subsequently Wack fired Plaintiff after telling him that the "FTSS JV human resource [sic] office" rejected the decision to give Plaintiff a verbal warning. (*Id.* at ¶¶ 13, 14.)

The Court notes that all these individuals, on whom Plaintiff relies to "show an agreement or a meeting of the minds," *Simmons* 47 F.3d at 1376, are FTSS JV employees. Under the intracorporate conspiracy doctrine, "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). Therefore, the actions of these individuals cannot form the basis for Plaintiff's conspiracy allegation, unless an exception to the intracorporate conspiracy doctrine applies.

There are two exceptions. First, the doctrine is "generally inapplicable 'where a co-conspirator possesses a personal stake independent of his relationship to the corporation.'" *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013) (quoting *ePlus Tech.*, 313

F.3d at 179). Second, "a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation." *Id.*

Here, neither exception applies. In *Painter Mill Grille, LLC*, the Fourth Circuit found that neither exception applied in a case where the plaintiff alleged that "the individual defendants were acting at all times as 'agent[s], servant[s] and/or employees[s]' of the corporate defendants and that the corporate defendants [were] therefore vicariously liable." Here, Plaintiff is likewise asserting a theory of vicarious liability based on the conduct of FTSS JV employees. Further, plaintiff has not alleged that any individual "possess[ed] a personal stake independent of [their] relationship to" their employer" or that they were acting outside the scope of their employment. *ePlus Tech.,* 313 F.3d at 179. Therefore, the Court finds that the intracorporate conspiracy doctrine applies and that, as a result, Plaintiff's pleading are insufficient to support his claim that Defendants Dae Sung and LB&B conspired for the purposes of depriving him of the equal protection of the laws or of equal privileges and immunities under the law, in violation of § 1985. Therefore, Count Five of Plaintiff's complaint must be dismissed.

**IV.     Conclusion**

Accordingly, an order shall issue GRANTING Defendants Dae Sung and LB&B's motion to dismiss Counts Five and Six of the complaint (ECF No, 11).

Dated this <u>16th</u> day of January, 2014.

BY THE COURT:

/s/
James K. Bredar
United States District Judge